Good morning. I may appease the court, Joseph Varnin, for appellant Barrera. I'd just like to address our first argument very briefly. It's that Barrera was charged with aggravated bank robbery, that the government chose to proceed on a theory that she had assaulted an employee of the Bank of America. There was one employee in the bank at the time that Barrera entered with this hoax device strapped to her stomach, pretending that it was a bomb. She persuaded the co-employee to offload bags of money to a car where a waiting accomplice was. But at no time did Barrera assault, I think it's Mrs. Palomera, who is the co-employee. Assault includes putting in fear, doesn't it? I don't know, Your Honor, if that's, it may be probative, but I think the real key is what the intent of the assault or is. In other words, you can be afraid of a number of things. If someone jumps out a corner and says boo to you and scares you, you may be afraid, but that's not necessarily an assault. I think the emphasis should be on the intent of the person who is causing the alleged assault. In this case, the ruse required. Well, how does California define an assault? Attempted battery, unconsummated battery, an unlawful attempt to apply force to another person. And none of those qualities or none of those elements were met in this particular case because the ruse required that our client, Barrera, pretend that she was solicitous of Palomera, that they were both in this together, that they had to cooperate in order to forestall any action by the bad guys. So can coercion qualify as an attempted battery? Can mental coercion qualify as an attempted battery under California law? I wish I were 25 years younger. I might be flexible enough to answer that question. I think strictly speaking, if you look at the definitional requirements, that it would not be. We're not saying that this is. California courts have not weighed in on this question. I don't know the answer to that question, but I suspect not. I think you can coerce someone into a false imprisonment type of situation, into a robbery type of situation. But I would think that an assault, just from the old days onward, requires that unlawful attempt to commit a battery or to apply force to another person. And again, as part of the ruse, our client had to pretend that they were in this together, and so she pretended to be solicitous towards Palomera. Now, the government has pointed to a statement that Barrera makes that says, I don't want anyone to get hurt, or I don't want nobody to get hurt. So if Ms. Barrera was on this conspiracy, and if she told her coworker that she had a bomb, which would blow up both of them, that's not an attempted battery? That's not an attempt to inflict bodily harm? I'm not sure that that was ever said. To be quite frank, I think it was. Well, what did she say to her coworker? She said, I don't want to die. Did she tell her that she had a bomb on her, that two guys had strapped a bomb to her? She did say that. Okay. She told them that they also knew who her coworker was, and that they knew where the coworker's daughter was in school? That's absolutely correct, Your Honor. But if I may address the coworker at school part of it, any type of – well, first of all, the coworker's daughter, who would be the target of the assault, they know where your daughter lives, they're going to go get her. It's not named in the indictment. The indictment only limits it, an assault against a B of A employee. Secondly, the instrumentality, the bomb, the faux bomb, the hoax bomb, is not going to be used against the daughter, who's presumably at school. Sure. So those are two separate things. Got that. Okay. But what about her telling them, I've got a bomb strapped to me? This does not present any kind of coercion or attempt at bodily harm or threat to bodily harm to her coworker? It's not morally wonderful conduct. It's not something that we should teach our kids at school. But whether it qualifies as an assault? No, but is it a threat? Pardon me? Is it a threat? Is it a threat of bodily harm? It's not a threat against Palomera, as I would understand it. Why not? Because a threat implies some sort of aggressive conduct towards the person. And this may be fine line drawing, but the statement in this case is not give me the money or nobody gets hurt, or in the typical hoax bomb situation where the guy comes up with a birthday cake with a needle on it and says, give me the money or you're going to go. It's not that type. It's a different type of situation. It is a little different, but why does that matter in this case? Whether she says, I've got a bomb and I'm going to blow you up, and maybe I blow up myself incidentally, or she says, somebody put a bomb on me and it's going to blow me up and, by the way, it may blow you up as well. Correct. Unless we get the money out the door. Pardon me? Unless we get the money out the door. Absolutely correct. But, again, what I'd say is what the court is bringing up, the concerns that the court is bringing up, go to the other prong of the robbery statute. In other words, there's two prongs, life in jeopardy and assault. Now, if you go to the life in jeopardy prong, this certainly is probative and probably conclusive because I'm sure that woman was scared to death and I'm sure she felt her life was in jeopardy, but the government failed to charge that in the indictment. No, but 2113D requires only, quote, an intent to and, in fact, generating a reasonable apprehension in the victim plus a threat to inflict bodily harm. Correct. Why aren't all those elements present here? Because she never made an assaultive, aggressive statement or action towards Palomero. As Judge Biver said, it doesn't have to be, unless you're giving me money, I'm going to blow you up. Don't you think, say, I have a bomb strapped to my body, unless we get the money out the door, we're both going to be blown up. Isn't that a threat? Again, I'm not sure, but I don't believe. If you're not sure, isn't it a jury question? No, I believe that the way that the court is phrasing it does not appear in the transcripts. I believe what. No, I'm trying to paraphrase your argument. That's what you said, that, you know, there's no threat from Ms. Barrera against the purported victim. That's right. Because she didn't say, I'm going to blow you up. Correct. She said, I'm going to blow us up. That's where perhaps we part ways, because respectfully I'm not sure if that appears in the transcripts, because according, she did follow the script to the letter, and according to the script, it would not make any sense for her to, in a sense, get out of character by threatening the other person, because the whole ruse is that we're both in this together and these terrible people have strapped us up. And that's the threat. The ruse is the threat. Unless we get the money out the door, we're both going to get blown up. Isn't that a threat? I'm not sure if that appears in the transcripts. In other words, I think she stuck to the script so well that language to that effect, that can really be considered. Why does that even matter? Because people understand what it means when you say, I've got a bomb strapped to me. I'm standing next to you. You tell me, I've got a bomb strapped next to me. I understand. I'm concerned for your life. I may well also be concerned for my own life. That's not much of a leap to get to that point, is there? That's true. But in the definition of assault in this Court's Coulter case, the elements of assault are quite differently phrased from the way that the Court has approached it. They say that you have to do specific things and you have to possess a specific intent, including, oddly enough, the present ability to give harm to the other person. Now, that's obviously lacking in this case because if it's a hoax bomb, you can't hurt anybody with it. But we're conceding that a hoax bomb is a dangerous weapon for purpose of the statute. What we are not conceding is that the bomb was used to assault the other person because any definition of assault is not met by the conduct of the defendant here. And to try to answer the Court's query, what does it have to do is that it would not make any sense for her to... In other words, she does not expect to get arrested and to be prosecuted for this. It's a hoax. It's a hoax within a hoax. So in order to carry out her role in the hoax, she can't break character and say, all right, give me the money or I'm going to blow you up, as a typical aggravated bank robber defendant would be. She has to play along. And in no way does she act aggressively or threaten the other person. And as to Judge Tashima's quote about, well, we're going to be blown up, I'm not sure if that actually appears anywhere in the case because I think, again, with the role playing, I think she stuck to the role assigned to her so well that all of the fear was aimed towards herself. They're going to blow me up. Help me out. Let's unload the money. Does your co-counsel, did you agree to share time with your co-counsel? I didn't think that we had this much. Well, how much time did you agree? We thought we only had a couple of minutes apiece. Okay, well, I think you've used up three-quarters of the time allocated. I'll submit on the other issues on the brief. All right. If the Court has any other questions, I'm glad to try to respond. Thank you. Thank you so much. Good morning. Raul Severo on behalf of Appellant Reyes-Vega. We would join in Barrera's argument that the evidence was insufficient to sustain the conviction for aggravated bank robbery. The issue of the constitutional effectiveness of counsel for Reyes-Vega's time in the district court is not before this court in this direct appeal. We have briefed the issues in this appeal as fully as possible, given the record of the trial court . . . given the trial record before the district court. We only wish to point out the two issues that we briefed fully regarding the trial judge's continuous interruption of cross-examination of key witnesses in this case, and it becomes a concern because it was just more than interruptions. These were interruptions in front of the jury, and there are points in the record that trial judge appears to diminish. Well, you're not asserting that those interruptions prevented counsel from sufficient cross-examination in the areas that he wanted to conduct cross-examination, are you? There are examples in the record of counsel being prevented from doing so, and I'll point out . . . Well, and that was prejudicial to the defense? Well, yes, it was. Give me an example. For example, Siri Calza, the testimony of Siri Calza, who's the confidential informant who testifies that Reyes-Vega, in the parking lot following a dinner when Ms. Barrera was already in the car, goes around to the rear of the car and confesses to Vega, I robbed the bank. In cross-examination of Siri Calza, the counsel for Vega started a line of questioning about Mr. Vega having a right abscess in his buttock, and the trial judge said, we're not doing that, what does that have to do with this trial? Completely cut off the questioning from there. And as a matter of fact, had counsel been allowed to explore further that line of questioning, the relationship between Vega and Calza, who were in the Marines and in Iraq, Vega was a squad leader and Calza was a medic, had always been characterized by these kinds of darkly humorous, sarcastic, joking exchanges. And it was precisely the nature, that was what Vega contended, was the nature of that exchange between Calza and Vega, where it was alleged that he confessed to the bank robbery. It was a joke. He said, yeah, I confessed to the bank, I did the bank robbery, I got the $6 million. But that wasn't allowed. And there are many examples that we point out in the record. But you've got about a minute left. Don't you want to make a point about severance? Well, I do. And I am in the tough position of not having made a record of the counsel for Vega below. So we review for plain error. So why didn't you tell us why it was plain error? Well, I think when you read the record in this case, it's obvious that from the first instance, when opening statements come out, Barrera's counsel becomes a second prosecutor in this case. And it was all about blaming it on Vega. And this is the way, and this becomes really important when you get into the evidence, which should have never been admitted, regarding Vega's romantic relationships, which is the amorous relationships that Mr. Vega had with all these women that the jury should have never been exposed to. What's the standard for severance? Whether it would be manifestly prejudicial. Okay. So where's the manifest prejudice, and how was the district court supposed to know that from the outset? Well, from opening statements, the district court heard Aurora Barrera's counsel. And it should have been obvious to the district court? I would think so. But it wasn't obvious to Vega's counsel. It was obvious to Vega's counsel to the extent that he tried to say, yeah, he was a Casanova, but. No, no, no. You're telling me that it was obvious to the district court that he should have severed the trial, but it wasn't obvious to Vega's counsel that he should seek a severance? It should have been obvious to Vega's counsel. And, again, the constitutional effectiveness of counsel. Probably on the habeas, the Clara attack. Yeah. Yeah. I mean, I think there's a strong argument that the defenses were mutually irreconcilable. Right. Yes. I mean, this wasn't a case of being mutually exclusive, but to the extent that it was a. . . Why haven't you waived the argument? Not just forfeited it, but waived even your plain error argument? Because Barrera's counsel did move for a severance, and Vega's counsel stayed silent during that. All he had to do was just say, yeah, I think this is a great idea. Agreed. And so why haven't you waived it? Why didn't I waive it? No. No. Why isn't it true? Why isn't it the case that you have waived the argument even about plain error at this point? You can forfeit an argument by omitting it, by failing to make it. But here you had a motion by Barrera's counsel which you failed to acknowledge. And I don't mean you. I understand there were other counsel. But that you failed to acknowledge. All you had to do was say, me too. And you don't even say that. Why isn't that. . . Why shouldn't the district court take that as waiver of the right to a severed trial, and that all of this then becomes an argument about ineffective assistance that counsel will have to waive for habeas? That may be right. That may be true. Certainly, I was looking all over the record for the Joiner founders. Thank you, counsel. You're over your time. Thank you. May it please the Court. Assistant United States Attorney, Christina Shea from the United States. After a five-day trial, a jury convicted Defendant Barrera and her boyfriend, Defendant Vega, of robbing a bank using a hoax explosive device. I will take the arguments as presented by counsel in the order they were presented, Your Honors, unless you have any questions. No, that's fine. Thank you. The sufficiency of the evidence regarding the explosive and the fear of bodily harm is clear. The Court's decision in Coulter is that it merely has to reasonably cause another person to fear bodily harm. Barrera planned the robbery, displayed the hoax device to her co-worker, told the co-worker not to call police because she did not want, quote, nobody to get hurt. The evidence showed that Palomera, the co-worker, and Barrera were next to each other in the bank. The co-worker testified she was afraid because she was concerned the device could be real. Imbued in any light, especially the light most favorable to the government, Your Honors, the evidence was sufficient to sustain the jury's verdict on this point. With respect to the comments during trial, the comments in this case were actually quite restrained. There were no objections. They were restrained? Maybe they were. Go ahead. There were no objections during trial to any of the trial court's comments. The comments were limited and brief. A few words here and there over an eight-minute period. I think there were a lot. The question is, was there any substantive area that was foreclosed so that the defendant was denied his right of confrontation or prejudice in any way? I think there was a lot of comments, and sometimes even there was an interjection, and then the witness would quote the district court judge in answering the next question. So there were a lot that was there in interference with the right of confrontation. No, Your Honor. A defendant did not in his briefing identify any specific area of cross-examination foreclosed. Before this court, he talked about how Mr. Calza, the district court did not let in discussion about Mr. Vega's right buttock, which the district court correctly stated was irrelevant. Whether or not there had been an abscess in the defendant's right buttock would have been irrelevant to the state robbery trial. What about counsel's argument that, well, he wanted to illustrate that this was just a continuing part of the relationship between the two and this kind of dark humor they engaged in? And, Your Honor, he did. He did talk about how they had a joking, jovial relationship. He talked about how there wasn't actually millions stolen from the bank robbery. And then that is, in a sense, exactly what defense counsel wanted to elicit from this witness, which he did elicit without discussion of Mr. Vega's anatomy. In addition, there are limiting instructions, as this court has approved in Scott, with respect to the trial court's comments in this case. All right. I'll turn now. I guess, let's just jump to what the things, I guess one thing that troubles me is that Vega did make a motion to sever and that was denied. But it seemed to me that the defenses were mutually irreconcilable because Vega's defense was that both defendants were innocent. And Barrera's was that Vega had manipulated her. Why was it an error not to sever the? Your Honor, a closer look at Barrera's defense would indicate that the part about Vega is kind of an aside. Her defense really was two black men kidnapped her. Vega sent them. She told Vega something in pillow talk. Vega had something to do with that. But that primarily she was under duress, she was not guilty by reason of duress because two black men appeared in her tiny garage, strapped a bomb to her, told her to go rob a bank. A jury could acquit both defendants if they believed her kidnapping story and believed Vega's story that he had nothing to do with that kidnapping. This is very different from the decision in Tudyk where there's two defendants, one stabbing, and only one person could have stabbed this guy. It's also different from Mayfield where the drugs are under the control of one defendant only. This is not a binary decision. Vega is not a necessary part of Barrera's defense. Barrera could have been not guilty, again, by reason of the kidnapping having nothing to do with Vega, and the jury rejected that. In addition, what unfolded at trial showed that the severance was not warranted. Instead of two prosecutors, you had two defense lawyers. We had two defense lawyers, if anything. Vega's cross of Barrera was aimed at reinforcing Barrera's defense and introducing evidence, trying to introduce inadmissible evidence that Barrera couldn't get in. Barrera's cross of government witnesses focused on their credibility, not saying that Vega did something, and that was the court's concern in Mayfield that the trial court had not sufficiently restrained defense counsel from acting perhaps inappropriately. In this case, there were no two prosecutors that unfolded at trial. And that's exactly why the waiver argument is serious in this case, because you can't wait until the jury comes back with a verdict you don't like in order to say, oh, I was prejudiced, there was a problem here. And that's under this court's decision in Sullivan. Vega has never raised this prior to appeal. And there's no – it's not a plain error decision under – review under Sullivan. It's actually just waiver. And that's – it's been waived by both parties in this case, in fact. Wait, I thought Barrera moved for severance and renewed that motion after trial. How is that waiver? The facts of Sullivan are exactly the same in this case. There's a pretrial motion for severance. It was not renewed during trial before the jury verdict was returned, and there was a post-trial motion. In that case, this court said there's a waiver because the defendant can't sit back, wait for a verdict he doesn't like after the evidence comes in, and say everything should have been severed. Now – oh, Barrera's testimony and her closing also highlights that Vega was a very small and unnecessary part of her defense. Her testimony was 90% about the kidnapping, what happened to her, and then some part about how she had been given material about his womanizing. And then Barrera also stuck by, in this case, the false alibi that she and Vega agreed to. That part of the story reinforces each other. She says and he says they got into a fight that night, and that's why he wasn't there at the robbery. He was at a Rite Aid buying her an apology card. And so that's why he couldn't have been part of the robbery. He did not masturbate in the robbery, according to him. According to her, she had nothing to do with it. She wasn't in contact with him because of this fight. That's mutually reinforcing, not mutually exclusive. And again, during trial, there's no real objection by Barrera to Vega's testimony, to Vega's case, and there's no real objection by Vega to anything that Barrera wants in. In addition, Vega did not object to Barrera's comments about his other girlfriends, which is what counsel before this court has identified as the prejudice. And in fact, he can't. The womanizing is the central part of Vega's defense at trial. He says, I was distracted by other women. I couldn't have possibly done the robbery. The morning of, we had a fight because of this other woman. I'm a Casanova. I'm a philanderer. That's the opening argument before there's any mention by the government of a binder that was sent to other girlfriends. And with that, Your Honors, if there's no other questions, the government would submit on its papers to ask the court to affirm the trial court. All right. Thank you very much, counsel. The United States v. Vega and Barrera will be submitted.
judges: Tashima, Wardlaw, Bybee